Case 09-06653-8-SWH    Doc 29    Filed 03/23/10    Entered 03/23/10 14:40:01    Page 1 of 10



**SO ORDERED.**

**SIGNED this 23 day of March, 2010.**

                                     *Stephani W. Humrickhouse*
                                     **Stephani W. Humrickhouse**
                                     **United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

| | |
|---|---|
| **IN RE:** | **CASE NO.** |
| **KIMBERLY ROSS THELEN** | **09-006653-8-SWH** |
|       **DEBTOR** | |

## ORDER DENYING MOTION TO DISMISS

The matter before the court is the bankruptcy administrator's motion to dismiss pursuant to 11 U.S.C. § 707(b)(1). A hearing took place in Raleigh, North Carolina on February 8, 2010.

Kimberly Ross Thelen filed a petition for relief under chapter 7 of the Bankruptcy Code on August 10, 2009. The bankruptcy administrator filed a statement of presumed abuse on September 22, 2009. At issue is the appropriate formula by which to calculate the debtor's child care expenses for purposes of Official Form B22A, pursuant to which the means test is calculated. The debtor averaged her monthly child care expenses for the same six-month pre-petition period over which her income was averaged and, using that calculation method and the resulting expense figure, the presumption of abuse did not arise. The bankruptcy administrator contends that only the debtor's child care expense for the month preceding her filing should be used, in which case the presumption

of abuse does arise. The bankruptcy administrator and counsel for the debtor agree that this particular aspect of the means test calculation presents questions of first impression in this district.

The debtor, Ms. Thelen, is employed as an electrical engineer with Belcan Corporation. Along with her petition under chapter 7, the debtor filed a completed Official Form B22A (Statement of Current Monthly Income and Means-Test Calculation). According to the form, her current monthly income ("CMI") as defined under 11 U.S.C. § 101(10A) is $5,025.50. That figure represents her average gross monthly income during the six-month period preceding the date on which she filed her petition, *i.e.* February 1, 2009 through July 31, 2009. A debtor's CMI is calculated for purposes of the means test, according to the directions provided on Form B22A, as follows:

> All figures must reflect average monthly income received from all sources, derived during the six calendar months prior to filing the bankruptcy case, ending on the last day of the month before the filing. If the amount of monthly income varied during the six months, you must divide the six-month total by six, and enter the result on the appropriate line.

Official Form B22A, Part II ¶ 2. In this case, the debtor's CMI is substantially higher than the monthly income she received as of the petition date because, during the preceding six-month period, Ms. Thelen's work hours were significantly cut, resulting in a correspondingly substantial loss of income. The CMI average includes four months at approximately $6,725 per month, and two months at $1,625 per month. The debtor's gross monthly income in August 2009, at the time the petition was filed, was $1,625 per month. That amount was reported on Schedule I.

This scenario is not uncommon. See, e.g., In re Shelor, 2008 WL 4344894 at *1 (Bankr. M.D.N.C. 2008) (debtor's income "plummeted" during the six months preceding chapter 13 filing and his actual income at the time the petition was filed was less than half the "average monthly

income" reflected for the six-month period). CMI reported on Form B22A often is significantly different from the income reported on Schedule I, as that schedule recognizes in its introductory paragraph: "The average monthly income calculated on this form may differ from the current monthly income calculated on Form 22A, 22B, or 22C."

The six-month averaging period used to calculate CMI, as defined and required in 11 U.S.C. § 101(10A)(A)(i), has an exacerbated effect on the means test result when the debtor's income plummets prior to the filing and the debtor's expenses – in this case, expenses for child care – are dramatically reduced just pre-petition. Line 30 of Form B22A allows a debtor to deduct child care expenses, as follows:

> Other Necessary Expenses: childcare. Enter the total *average* monthly amount that you *actually* expend on childcare–such as baby-sitting, day care, nursery and preschool. Do not include other educational payments.

Official Form B22A, line 30 (emphasis added). In line 30, the debtor indicated that her child care expenses were $1,213.33 per month. Debtor's counsel indicated that this number represents the average child care cost per month, over the same six months used to calculate CMI, and the calculations include four months at $1,820 per month and two months at a cost of zero. Counsel explained that when the debtor worked full time, she incurred costs for child care in relation to her work schedule. When her work hours were dramatically reduced, she no longer needed extensive child care, and she responded by eliminating those costs. The bankruptcy administrator readily agrees that the basis for reducing these expenditures was not only reasonable, but laudable. The debtor properly reacted to her income reduction by decreasing her expenses pre-petition.

The Schedules I and J filed along with the debtor's petition illuminate the change in the debtor's financial circumstances more fully. On Schedule I, which calls for an "estimate of average

3

or projected monthly income at time case filed [sic]," the debtor reports her current average monthly net income as $1,498.25. On Schedule J, her child care expenses as of the time the case was filed are reported as zero. Paragraph 19 of Schedule J requires a debtor to "describe any increase or decrease in expenditures reasonably anticipated to occur within the year following the filing of this document," and the debtor responded that "[w]hen her hours were drastically reduced effective June 1, the debtor [took] over the child care which was costing $1820 per month." The debtor has fully and accurately disclosed her financial situation at the time of her bankruptcy filing.

With the single exception of the child care cost reported on Form B22A, the bankruptcy administrator does not question the accuracy of the CMI calculations or the debtor's income and expenses as stated on Schedules I and J. During the hearing, counsel for the bankruptcy administrator emphasized that there is no indication that the debtor's petition was filed in anything other than good faith, and that the change in the debtor's child care costs is the direct result of the debtor's prudent, cost-saving measures. However, as the bankruptcy administrator interprets 11 U.S.C. § 707(b)(2)(A)(ii)(I) and Form B22A, the debtor may claim as an expense only the amount that she spent per month *as of the time the petition was filed*, not the six-month average of the amounts she actually spent during the six months preceding her filing. Here, although the debtor no longer incurs child care costs, had eliminated those expenses prior to filing the petition, and will not incur those expenses for the foreseeable future, she claimed an actual average monthly child care cost of $1,213.33. A snapshot of her "actual" monthly child care cost at the time the petition was filed indicates expenses of zero, which, if factored into the expense calculations along with her high CMI, would give rise to a presumption of abuse.

4

In response, the debtor argues that the calculations should be made on an "apples-to-apples" basis in order to present a clearer picture of her financial condition. If her previous salary is used to obtain a historical picture of her income, the debtor reasons, then the child care expenses during that same period, which *were* "actual," should be accounted for as well. The debtor concludes that applying different formulas to income and expenses on the facts of this case skews the calculation toward an unfair, absurd, and unduly harsh result. Counsel for the bankruptcy administrator acknowledges that the "mechanical nature" of the means test as he interprets it sometimes results in anomalies, and that in this particular case the result would be "draconian." In his view, the language of the statute presents little opportunity to avoid it.[1]

## DISCUSSION

This district is no stranger to the machinations of the means test, and it is well understood that the test is complicated in both interpretation and application. See, e.g., Musselman v. eCast Settlement Corp., 394 B.R. 801 (E.D.N.C. 2008) (construing, in the context of the means test, the calculation of "projected disposable income" and determining what amounts are "reasonably necessary to be expended" for above-median debtors in a chapter 13 case); In re Alexander, 344 B.R. 742, 749 (Bankr. E.D.N.C. 2006) (concluding that to find chapter 13 debtor's projected disposable income, "one simply takes the calculation mandated by § 1325(b)(2) and does the math,"

---

[1] Courts do have the ability to reset the time in which to calculate CMI pursuant to 11 U.S.C. § 101(10A)(A)(ii), but that authority is contingent on a debtor not having filed a statement of income. See 11 U.S.C. § 521(a)(1)(B)(ii). Here, the debtor has already filed the Schedule I. See In re Shelor, 2008 WL 4344894 at *1-2 (Bankr. M.D.N.C. 2008) (CMI calculation period could not be adjusted because the debtor had not promptly obtained an order excusing the filing of the Schedule I and setting a new hearing, which would have established a new six-month period). The debtor does not assert any grounds on which to strike the statement of income. The court has not been asked to consider whether she may still have the right to move for authority to strike her Schedule I.

while acknowledging widespread debate about that process within the bankruptcy courts and community); In re Hoff, 402 B.R. 683 (Bankr. E.D.N.C. 2009) (invoking exercise of discretion to adjust six-month period over which income is calculated for purposes of Schedule I in a chapter 13 case involving seasonally-employed debtors).

The parties agree that this particular issue – whether the debtor's claimed monthly child care expenses may reflect an actual six-month average of amounts actually expended, or must instead reflect the snapshot of monthly cost at the time the petition is filed – apparently has eluded focused discussion thus far. They are largely right. The extent to which it is, or is not, common practice to average child care expenses over some range of months does not appear to be the subject of a published opinion. The context in which this issue arose also is uncommon: most inquiries have focused on whether a debtor's expenses have increased, not whether they decreased.

Questions of statutory construction require the court to look first to the language of the statute. "When the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms." Lamie v. U.S. Trustee, 540 U.S. 526, 534, 124 S. Ct. 1023, 1030 (2004) (internal quotation marks and original citation omitted). The bankruptcy administrator's starting point is 11 U.S.C. § 707(b), which provides, in relevant part, that

> [t]he debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's *actual* monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent.

11 U.S.C. § 707(b)(2)(A)(ii)(I) (emphasis added). In essence, the statute juxtaposes the required use of expenses found on National Standard and Local Standard tables, which are *not actual* as to the debtor, with Other Necessary Expenses as set forth in the categories described by the IRS, which are to be actual as to the debtor. The bankruptcy administrator contends that "the operative word in this portion of the statute is the word 'actual,'" and that the issue is whether the debtor's claimed expenses represent her actual expenses. Bankr. Admin.'s Mot. to Dismiss at ¶ 6.

According to Black's Law Dictionary, the term "actual" means "existing in fact; real." Black's Law Dictionary 35 (7th ed. 1999). Using that definition, the court cannot entirely agree with the bankruptcy administrator's characterization of the issue because the amounts that the debtor spent are not in dispute. The court believes the bankruptcy administrator's challenge really is a temporal one – that the debtor failed to claim her actual monthly child care cost *as of the time of filing*. Schedule J calls for the estimate of the "average or projected monthly expenses of the debtor and the debtor's family *at [the] time [the] case [is] filed*," but there is no corresponding temporal requirement in the statute. Debtor's Schedule J (emphasis added). Nor is there one in line 30 of Form B22A, which implements the statute. Instead, Form B22A requires that the claimed amount reflect a monthly total for different forms of child care, and that the amount be the "total average monthly amount" that the debtor "actually" expends. Official Form B22A, line 30.

The statutory means test requires income to be averaged over a six-month pre-petition period to arrive at CMI, but it does not require that expenses be averaged over that same period.[2] However,

---

[2]The statute includes the language "as in effect on the date of the order for relief," but both the language and the structure of that sentence indicate that the phrase pertains to the Internal Revenue Service standards in effect for the area in which the debtor resides, not the expenses. It is implausible to read "*as in effect* on the date of filing" to refer to expenses. Expenses may be incurred, or expended, but are not "in effect." The court interprets that language to refer to the

7

Official Form B22A does provide more information, and its use is mandated by Bankruptcy Rule 1007(b)(4), which provides:

> Unless § 707(b)(2)(D) applies, an individual debtor in a chapter 7 case shall file a statement of current monthly income prepared as prescribed by the appropriate Official Form, and, if the current monthly income exceeds the median family income for the applicable state and household size, the information, including calculations, required by § 707(b), prepared as prescribed by the appropriate Official Form.

Fed. R. Bankr. P. 1007(b)(4). The use of the official forms promulgated by the Judicial Conference also is required by Bankruptcy Rule 9009, which provides that the forms "shall be construed to be consistent with these rules and the Code." Fed. R. Bankr. P. 9009.

Form B22A directs a debtor to disclose "the total average monthly amount that you actually expend on childcare." Black's Law Dictionary defines "average" as follows: "1. A single value that represents a broad sample of subjects; esp. in mathematics, the mean, median or mode of a series. 2. The ordinary or typical level; the norm." Black's Law Dictionary at 131. In other words, Form B22A specifically does *not* require a "snapshot" of the debtor's child care expenses for a specific point in time, *i.e.* the month in which the petition was filed, but rather supports the conclusion that more than one period of time must be considered in order to implement the average calculation.

Though it calls for an average, Form B22A does not specify the time period over which to calculate average child care expenses, or for the calculation of the other necessary expenses listed. It appears that the most appropriate time periods likely vary according to context. In a related "necessary expense" category, taxes (Form B22A, line 25), similar language prompts some courts

---

"applicable monthly expense amounts" and "categories specified as Other Necessary Expenses," as issued by the IRS and in effect at the time of filing.

8

to look to a debtor's most recent tax return, if one is available, and to use that as a basis by which to calculate a monthly average before adjusting to account for any factors that are unique to the current year. In In re Lipford, 397 B.R. 320, 334 (Bankr. M.D.N.C. 2008), the court concluded that "any method that reasonably and accurately reflects the debtor's actual tax expense for the six-month period would meet the requirements of line 25 on Form B22A." In language similar to that used for the child care expense in line 30, the debtor was directed to enter the "total average monthly expense that you actually incur for all federal, state, and local taxes." Official Form B22A, line 25. The court assumed the relevance of the six-month period required by § 101(10A)(A)(i) to calculate income, and calculated the "average monthly tax expense" with reference to previously filed tax returns in order to avoid the inclusion, in expenses, of amounts withheld from paychecks but ultimately refunded to the debtor. 397 B.R. at 333-35; see also In re Barbour, 2009 WL 3053697 (Bankr. E.D.N.C. 2009) (citing Lipford with approval and determining chapter 7 debtor's actual monthly tax expense with reference to previously filed tax returns and tax refunds); In re Gray, 2009 WL 3486658 (Bankr. M.D.N.C. 2009) (holding that tax expense is calculable using prior year's tax returns and earnings statements).

In this case, the issue is simply whether the debtor's actual expenditures may appropriately be averaged over the same six-month period of time as her income. The court concludes that for purposes of the means test, averaging the debtor's actual child care expenses over the six-month CMI period is both reasonable and uniquely appropriate. The debtor's income and child care expenses were linked both before her change in employment status and after, when she intentionally adjusted those expenses to reflect her diminished income and diminished need for child care. The court does not hold that a six-month averaging period must be used, or that child care expenses

9

incurred in the month prior to filing a petition under chapter 7 cannot ever be representative of the average amount actually spent per month.  There may be other reasonable and accurate forms of measurement as well, and the official form leaves room to determine an average amount based on factors relevant to the case at hand.  In this case, lacking a better alternative or a different calculation mandated by statute, the classic apples-to-apples formula works perfectly.

The court's conclusion is based wholly on the plain language of the statue and its interpretation of Form B22A, but it is worth noting that this holding also is consistent with public policy.  The debtor reduced her expenses, prepetition, to align with her prepetition reduction in income.  That undertaking is indicative of the debtor's good faith and entirely in keeping with prudent financial management.  Ironically, had she continued to incur the same expenses, or even increased them instead of promptly reducing them, the presumption of abuse would not have arisen.  That untoward result is wholly inconsistent with sound public policy.

For the foregoing reasons, the bankruptcy administrator's motion to dismiss is DENIED.

**SO ORDERED**.

**END OF DOCUMENT**